UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-61190-RNS
Honorable Judge Robert N. Scola, Jr

LUIS GONZALEZ,
    Plaintiff,

v.

UNITED STATES CENTER FOR SAFESPORT,
AND USA TAEKWONDO, INC.,
    Defendants.

**DEFENDANTS' MOTION TO DISMISS
Under Fed. R. Civ. P. 12(b)(1) & 12(b)(6)**

Defendants, the United States Center for Safe Sport (Center) and USA Taekwondo, Inc. (USAT), hereby move to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) & 12(b)(6). Plaintiff's lawsuit improperly tries to challenge an eligibility determination that Congress has entrusted exclusively to the Center, which investigates sexual misconduct in connection with amateur athletics overseen by the U.S. Olympic Committee (USOC) and USOC-designated national governing bodies (NGBs) such as USAT. Courts do not have jurisdiction to review the Center's eligibility determinations under federal law. To the extent there is any role for federal courts to play in this field, Plaintiff's complaint fails to state a claim on the merits.

**Background**

    A.    <u>The Center's safe sport responsibilities for USOC and NGBs such as USAT</u>

The Center is responsible under federal law and as the USOC designee, for safeguarding against emotional, physical, and sexual abuse in amateur sports. In doing so, the Center investigates and resolves claims of abuse by members and those acting under the auspices of the

USOC and its NGBs.  The NGB involved here is the USAT, which is the USOC designated NGB for the Olympic sport of taekwondo.

The Center was congressionally empowered by the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act, Pub. L. No. 126, 115th Cong., 2d Sess., 132 Stat. 318 (Feb. 14, 2018) (Safe Sport Authorization Act), which amended and added to the Ted Stevens Olympic and Amateur Sports Act, codified as amended at 36 U.S.C. ch. 2205.  Congress provided that the Center shall "serve as the independent national safe sport organization and be recognized worldwide as the independent national safe sport organization for the United States." 36 U.S.C. § 220541(a)(1).  Among the Center's responsibilities is to "exercise jurisdiction" over USOC and NGBs "with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." *Id.* § (a)(2).

The Center must develop "policies and procedures" preventing "emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through" NGBs and Paralympic sports organizations.  *Id.* § (a)(3).  Those policies and procedures have the status of federal law made binding on the NGBs.  *See id.* § (b) ("The policies and procedures developed under subsection (a)(3) shall apply as though they were incorporated in and made a part of section 220524 of this title.").  The Center is also charged with establishing mechanisms for the "reporting, investigation, and resolution … of alleged sexual abuse in violation of the Center's policies and procedures." *Id.* § (a)(4).  Those mechanisms must "provide fair notice and an opportunity to be heard and protect the privacy and safety of complainants." *Id.* § (a)(5).

In addition to these direct statutory responsibilities, the USOC requires NGBs to comply with the safe sport policies and procedures of the Center, which opened in March 2017.  The USOC now mandates that each NGB "comply with" the "policies and procedures of the

114928125.1                                    2

independent safe sport organization designated by the [USOC] to enhance safe sport practices and to investigate and resolve safe sport violations…." USOC Bylaw Section 8.7(*l*).

The Center's SafeSport Code and procedures are posted at www.safesport.org. *See* Exhibit 1 (as originally effective March 3, 2017, applied to this case). For acts predating the Code, the Center applies the applicable NGB's standards that each NGB member agreed would cover their conduct as a condition of membership. The Center's rules establish the procedures for investigating, resolving and sanctioning reported Safe Sport violations. Under those procedures, the Center's decision is final, except that a responding or reporting party may seek arbitration.

B.  The Center's Investigation and Decision Regarding Plaintiff Gonzalez

The twenty-eight-year-old plaintiff (the responding party in the Center's proceeding) has been a professional member of USAT since at least 2013. He coaches taekwondo athletes and owns a business, Limitless Martial Arts and Fitness, in Plantation, Florida. *See* Exhibits 2 and 3 hereto (Center's Decision and Investigation Report).[1]

Plaintiff began coaching a minor athlete, NP, in 2011 when she was twelve and he was twenty-two. He admitted to "having feelings" for NP by early 2016 and began a romantic relationship later that year, when she was still seventeen. He would massage her during competitions and sometimes shared a hotel room with NP and her mother at events. No later than February 1, 2017, when NP turned eighteen, the relationship became sexual. *See id.*

---

[1] Exhibits 2 and 3 may be considered, not only under Rule 12(b)(1) but even under Rule 12(b)(6), because the complaint references them, they are central to the complaint, and they are indisputably authentic. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Lucas v. USAA Cas. Ins. Co.*, No, 16-23946-Civ-Scola, 2016 WL 10892311, *3 (S.D. Fla. Dec. 16, 2016). Due to privacy concerns, Defendants have filed a motion for leave to file those two exhibits under seal concurrently with this Motion to Dismiss.

After an investigation, which included an interview with Plaintiff, the Center found his romantic and sexual relationship with a young athlete he was coaching violated several Safe Sport policies established by USAT at the relevant times.  One violated USAT rule prohibited:

> Romantic or sexual relationships, which began during the sport relationship, between athletes or other participants and those individuals with direct supervisory or evaluative control, or are in a position of power and trust over the athlete or other participant. Except in circumstances where no imbalance of power exists, coaches have this direct supervisory or evaluative control and are in a position of power and trust over those athletes or participants they coach. The prohibition on romantic or sexual relationships does not include those relationships where it can be demonstrated that there is no imbalance of power. For example, this prohibition does not apply to a pre-existing relationship between two spouses or life partners.

Ex. 3 at p. 4.  The Center also found that Plaintiff had violated rules on sharing overnight accommodations with athletes and on massaging athletes.  *Id.*

The Center suspended Plaintiff for ten years from USOC and NGB activities.  *See* Ex. 2 at p. 2 ("Beginning on February 14, 2018, and for a period of 10 years, Responding Party Luis Gonzalez is prohibited from participating, in any capacity, in any activity or competition authorized by, organized by, or under the auspices of the United States Olympic Committee, the national governing bodies recognized by the United States Olympic Committee, and/or a Local Affiliated Organization of a national governing body recognized by the United States Olympic Committee.")  That suspension is followed by five years' probation.  *See id.*

In accordance with the Center's rules, the decision notified Plaintiff that he could request arbitration within five days of the decision.  Under those rules, the Center will initiate an arbitration proceeding upon written request of a Responding Party such as Plaintiff Gonzalez, but the arbitration will proceed only upon the Responding Party's depositing payment of arbitration fees (absent a hardship exemption).  *See* Ex. 1, App. B, R-35b.1 ("If the Responding Party fails to provide the deposit, then the arbitration may not proceed.").

C.     Plaintiff's Complaint

Plaintiff's complaint concedes that he began a romantic relationship with one of his Taekwondo "students" while she was a minor (though he maintains her mother consented) and that the relationship became sexual when she turned eighteen while still remaining his student. Plaintiff Gonzalez asks a court "to declare the parties' rights with respect to the existence of an arbitration agreement, the validity, findings, conclusions, and results of SafeSport's investigation, and the validity of the suspension."  Complaint at 5, ¶ 38.  Its final prayer seeks judicial rulings that "(1) there is no arbitration agreement, (2) Gonzalez is not bound by SafeSport's Code of Conduct, and/or (3) Gonzalez did not violate SafeSport's Code of Conduct." *Id.* at 5-6.

## Legal Argument

Plaintiff's lawsuit seeks precisely what Congress has made clear courts cannot do: review of the merits of an eligibility ruling by the body charged with determining fitness to participate in amateur athletics overseen by the USOC and its national governing bodies like USAT. The complaint therefore should be dismissed for lack of jurisdiction or for failure to state a claim. A jurisdictional dismissal can raise a "factual" defense based on "extrinsic evidence," whereas the latter generally is limited to the face of the complaint. *See Douglas v. United States*, 814 F.3d 1268, 1274 (11th Cir. 2016). That distinction is not particularly significant here, given that a "district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). Also, "a district court may consider judicially noticed documents." *Id.* Here, the legal defects are

apparent from the face of the complaint, as well as the Center's documents cited therein and judicially noticeable.

Plaintiff cannot bring state law challenges to the Center's eligibility ruling. Federal law preempts state law claims relating to eligibility determinations. *Pliuskaitas v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1223-27 (D. Ut. 2017), *aff'd on other grounds*, 720 F. App'x 481 (10th Cir 2018); *accord Graham v. U.S. Anti-Doping Agency (USADA)*, No. 5:10-CV-194-F, 2011 WL 1261321, at *6 (E.D.N.C. Mar. 31, 2011) (Act "preempts state law causes of action that essentially seek relief based on an athlete's eligibility"); *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252, 1257 (D. Haw. 2004) (state law claims challenging eligibility determination "are preempted by the Act"); *see generally Slaney v. Int'l Amateur Ath. Fed.*, 244 F.3d 580, 595-96 (7th Cir. 2001).

Nor does federal law provide an express or implied cause of action against the bodies charged with determining amateur athletic eligibility. *Martinez v. USOC*, 802 F.2d 1275, 1280-81 (10th Cir. 1986); *Oldfield v. Athletic Congress*, 779 F.2d 505, 508 (9th Cir. 1985); *Michels v. USOC*, 741 F.2d 155, 157-58 (7th Cir. 1984). Any federal claims challenging an eligibility ruling, therefore, should be dismissed for lack of "jurisdiction." *Oldfield*, 779 F.2d at 508.

There also is no merit to the complaint's suggestion that Plaintiff can bring this lawsuit because there purportedly is no "executed agreement to arbitrate." This argument fails because Plaintiff—like everyone else wanting the benefits of USAT membership—must agree to the Center's rules and procedures as a condition of that membership. *See* Ex. 4 (USAT Bylaw § 15.2) (available at https://www.teamusa.org/usa-taekwondo/v2-resources/bylaws) ("All members of USAT and all persons participating in its activities, by virtue of such membership or participation, agree[] to be bound by … all rules and regulations of … the U.S. Center for

SafeSport."). The Center's rules require that any challenge to a Center's eligibility ruling be arbitrated. *See* Ex. 1, App. A, § III(D)(5)-(7); Ex. 1, App. B, R-2 & R-7.

This is precisely the situation that federal courts have held require compliance with administrative procedures, including arbitration, as required as a condition of NGB membership. The Second Circuit thus has explained that an agreement to arbitrate undisputedly existed where "[a]s a member of USATF, petitioner has expressly agreed to abide by its rules and regulations." *Jacobs v. USA Track & Field*, 374 F.3d 85, 87-89 (2d Cir. 2004); *see also Armstrong v. Tygart*, 886 F. Supp. 2d 572, 588-89 (W.D. Tex. 2012) (holding that cyclist Lance Armstrong had agreed to U.S. Anti-Doping Agency rules, including mandatory arbitration, by agreeing to be subject to NGB rules incorporating USADA rules).

Finally, Plaintiff's undeniable failure to exhaust his administrative remedies, by pursuing and paying for the arbitration offered by the Center in accordance with its procedures, precludes whatever limited judicial review might be available under the Federal Arbitration Act. Plaintiff has not stated any plausible federal claim that the Center violated its own procedures. *See generally Walker v. USA Swimming, Inc.*, No. 3:16–0825, 2017 WL 782970, at *5 (M.D. Tenn. Mar. 1, 2017). Regardless, there is no subject matter jurisdiction over any such claim prior to exhausting arbitral remedies. *See Barnes v. Int'l Amateur Ath. Fed.*, 862 F. Supp. 1537, 1546 (S.D. W. Va. 1993) ("Inasmuch as the plaintiff is required to have exhausted his available administrative remedies under the Amateur Sports Act before seeking judicial review, his failure to have done so renders the court without subject matter jurisdiction over his claims."); *see also Slaney*, 244 F.3d at 595 (Judicial "[i]ntervention is appropriate only in the most extraordinary circumstances, where the association has clearly breached its own rules, that breach will imminently result in serious and irreparable harm to the plaintiff, *and the plaintiff has exhausted*

*all internal remedies*.") (emphasis added; quoting *Harding v. U.S. Figure Skating Ass'n*, 851 F. Supp. 1476, 1479 (D. Or. 1994), *vac. on other grounds*, 879 F. Supp. 1053 (D. Or. 1995)).

## Conclusion

The Court should dismiss the complaint, which violates federal law by seeking judicial intervention in an eligibility matter that Congress entrusted to the Center, for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff's sole remedy for challenging the Center's eligibility determination was through arbitration, which he indisputably failed to pursue, rather than through the courts.

Respectfully submitted,

\_/s/Kevin P. McCoy_____

Kevin P. McCoy (FBN 0036225)
Gregory A. Gidus (FBN 105930)
**CARLTON FIELDS JORDEN BURT, P.A.**
4221 W. Boy Scout Blvd., Suite 1000
Tampa, FL  33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
kmccoy@carltonfields.com (primary)
ggidus@carltonfields.com  (primary)
lfuller@carltonfields.com (secondary)
tpaecf@cfdom.net (secondary)
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on June 1, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

>                                */s/  Kevin P. McCoy*
>                                Kevin P. McCoy (FBN 0036225)

## SERVICE LIST

*Luis Gonzalez v. United States Center for Safe Sport & USA Taekwondo, Inc.*
Case No.: 0:18-cv-61190-RNS
United States District Court, Southern District of Florida

Andrew Polenberg
John Polenberg
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
apolenberg@beckerlawyers.com
jpolenberg@beckerlawyers.com
TFritz@beckerlawyers.com
*Attorneys for Plaintiff*
*Via CM/ECF*