United States District Court
for the
Southern District of Florida

| Luis Gonzalez, Plaintiff, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 18- 61190-Civ-Scola |
| United States Center for SafeSport | ) | |
| and USA Taekwondo, Inc., | ) | |
| Defendants. | ) | |

**<u>Opinion Order Granting Motion for Remand</u>**

This matter is before the Court on the Plaintiff Luis Gonzalez's ("Gonzalez") motion to remand, (the "Motion," ECF No. 12), which raises two related jurisdictional issues: (1) whether removal jurisdiction under the Ted Stevens Olympic Amateur Sports Act (the "Sports Act," 36 U.S.C. §§ 220501 *et seq.*) extends to Defendants USA Taekwondo, Inc. ("USAT") and United States Center for SafeSport (the "Center"); and (2) whether the Safe Sports Authorization Act (the "SSAA," 36 U.S.C. §§ 220541 *et seq.*) "completely" preempts, and thus supplies federal jurisdiction for, Gonzalez's state law declaratory judgment claim. The Defendants also claim diversity jurisdiction exists under 28 U.S.C. § 1332.

After carefully reviewing the parties' submissions and the applicable law, the Court answers both questions in the negative and finds the Defendants have not met their burden to establish diversity jurisdiction. Thus, the Court **grants** the Motion (**ECF No. 12**) and **remands** this case to the Florida state court.

1. **Factual Background**

USAT is the national governing body ("NGB") for taekwondo in the United States, as designated by the United States Olympic Committee ("USOC"). The Center is a non-profit corporation empowered by Congress to exercise jurisdiction over the USOC and its NGBs "with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." Gonzalez is a taekwondo coach in Florida who runs a training academy for young athletes. Gonzalez was a member of the USAT.

This case arises from the Center's investigation of allegations that Gonzalez engaged in an improper romantic and sexual relationship with a young athlete he was coaching. That investigation culminated in a finding that Gonzalez violated the Center's code of conduct. Ultimately, the Center suspended Gonzalez from coaching for ten years and prohibited him from participating in any activity authorized by the USOC.

On May 2, 2018, Gonzalez filed suit in the Seventeenth Judicial Circuit in and for Broward County, Florida, raising one count for declaratory relief under Florida law. The complaint requested a declaration that no arbitration agreement existed between Gonzalez and the Center, that Gonzalez was not bound by the Center's Code of Conduct, and that Gonzalez did not violate the Center's Code of Conduct.

The Center and USAT removed the case to this Court, (ECF Nos. 1, 12), and Gonzalez timely sought remand (ECF No. 16).

2. **Remand Standard**

Removal from state court to federal court is only appropriate if the action is within the original jurisdiction of the federal court. 28 U.S.C. § 1441(a). Original jurisdiction exists when a civil action raises a federal question, or where the action is between citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332.

"The existence of federal jurisdiction is tested at the time of removal," *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008), and "[t]he burden of establishing subject matter jurisdiction falls on the party invoking removal." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411-12 (11th Cir. 1999). "[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Id.* at 411; *see also Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) ("[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.").

3. **Analysis**

A claim pled under state law "may be removed to federal court in only two circumstances—when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Both circumstances are raised in this case.

The Defendants removed Gonzalez's Florida law claim for declaratory relief under 28 U.S.C. § 1441 based on three separate and distinct jurisdictional bases: (1) the Sports Act's jurisdictional grant under 36 U.S.C. § 220505(b)(9), (ECF No. 12 at pp. 3–4 (citing 36 U.S.C. § 220541(a)(2)); (2) federal question jurisdiction under 28 U.S.C. § 1331, arguing that the SSAA "completely" preempts Gonzalez's state-law claim, (ECF No. 12 at pp. 2–3, 7-12); and (3) diversity jurisdiction under 28 U.S.C. § 1332, (ECF No. 12 at pp. 4-5, 13-15).

Gonzalez sought remand, contesting all three jurisdictional bases. (ECF No. 16.) The Court addresses each in turn.

### A. Section 220505(b)(9) Does Not Permit Removal By the Center or USAT

The Defendants argue that 36 U.S.C. § 220505(b)(9) creates subject matter and removal jurisdiction in this case. (ECF No. 12 at pp. 3-4, 12-13.) The Court disagrees.

Through the Sports Act, Congress granted removal jurisdiction over claims brought against the USOC that "solely relating to" its responsibilities under that statute. 36 U.S.C. § 220505(b)(9). In full, section 220505(b)(9) provides that the "corporation may":

> sue and be sued, except that any civil action brought in a State court against the corporation and solely relating to the corporation's responsibilities under this chapter shall be removed, at the request of the corporation, to the district court of the United States in the district in which the action was brought, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenship of the parties involved, and except that neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter

*Id.* By its terms, that section is only applicable where a "civil action [is] brought in a State court against the corporation." *Id.* Even then, removal is only authorized upon "the request of the corporation." *Id.* "Corporation" is defined under the Sports Act to "mean[] the United States Olympic Committee." *Id.* § 220501(b)(6). Nonetheless, the Defendants submit that this statute permits NGBs, like USAT, and the Center to remove actions brought against those entities to federal court.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Because the authority "to set the limits of federal jurisdiction" lies with Congress under Art. III, federal courts must "carefully guard[]" against expanding their own jurisdiction through "judicial interpretation." *Stoneridge Inv. Ps., LLC v. Scientific-Atlanta*, 552 U.S. 148, 164-65 (2008) (citation omitted). Thus, "removal statute[s] should be construed narrowly with doubt construed against removal." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

In line with these principles, the Court declines to expand the Sports Act's jurisdictional grant to cover the Center and USAT. The "Center" and "national governing body" are defined terms under the Sports Act. 36 U.S.C. § 220501(b)(4) ("'Center' means the United States Center for Safe Sport"); *id.* § 220501(b)(8) ("'national governing body' means an amateur sports organization that is recognized by the corporation"). Neither term, however, is mentioned in section

220505(b)(9), and jurisdiction under that statute is limited to actions brought against and removed by the "corporation" (i.e. the USOC), which is not a party to the current action. Congress is presumed to have "said what it meant and meant what it said" in defining jurisdiction under the Sports Act, *Lindley v. F.D.I.C.*, 733 F.3d 1043, 1055 (11th Cir. 2013), and the Court "refrain[s] from reading [those defined terms] into the statute when Congress has left [them] out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and alterations omitted)). To the extent Congress intended to permit removal by the Center or USAT—an intent this Court does not infer—such a jurisdictional grant is properly accomplished through legislative amendment, not judicial expansion.

Accordingly, section 220505(b)(9) is not a source of federal subject matter jurisdiction in this case, and the Defendants arguments to that end are rejected.

### B. "Complete" Preemption is Not a Basis for Jurisdiction in This Case

Next, the Defendants submit that federal question jurisdiction exists in this case under the "complete preemption" doctrine. (ECF No. 12 at pp. 2-3, 7-12; ECF No. 17 at pp. 2-9.) Specifically, the Defendants argue that Gonzalez's state law declaratory judgment action "challenges the Center for SafeSport's eligibility decision," (ECF No. 17 at p. 2), and that "Congress plainly intended that the Center have exclusive authority to resolve amateur athletic eligibility disputes involving sexual misconduct" under the SSAA, (*id.* at p. 5). In support of remand, Gonzalez argues that his claim is not completely preempted by the SSAA, in part, because that statute creates no federal cause of action.

For the reasons explained below, the Court agrees with Gonzalez and finds that "complete" preemption is not a source of federal jurisdiction in this case.

#### i. "Complete" Preemption vs. "Ordinary" Preemption

Two distinct preemption doctrines are arguably raised by the facts of this case: "Complete" preemption,[1] and "ordinary" preemption.[2] While only "complete" preemption is relevant to adjudication of the Motion, for context and clarity, the Court will briefly describe the nature of both.

---

[1] This doctrine is at times referred to as "super" preemption. *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003).

[2] "Ordinary" preemption is also referred to as "defensive preemption." *Community State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011).

"Ordinary" preemption is an affirmative defense that "simply allows a defendant to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law." *Strong*, 651 F.3d at 1260 n.16. As relevant here, "ordinary" preemption is neither a source of federal subject matter jurisdiction, nor a basis for removal to federal court. *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352-53 (11th Cir. 2003) ("[A] case may *not* be removed to federal court on the basis of a federal defense, including that of federal preemption." (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987))).

"Complete" preemption, on the other hand, is a rarely invoked and "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Id.* at 1353. The doctrine is a limited exception to the "well-pleaded complaint" rule and requires a determination that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim.'" *Caterpillar*, 482 U.S. at 393. "Complete preemption creates federal subject-matter jurisdiction over completely preempted state-law claims, allowing for removal to federal court." *Strong*, 651 F.3d at 1260 n.16.

The Supreme Court recognizes complete preemption "hesitatingly," and displays "no enthusiasm" to extend the doctrine into areas of law beyond the Labor Management Relations Act, the Employee Retirement Income Security Act and the National Bank Act. *BLAB T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 856 (11th Cir. 1999); *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1176 n.7 (11th Cir. 2010) ("The Supreme Court has applied the complete preemption doctrine to only three federal statutes").

So too does the Eleventh Circuit. *See, e.g., Ammedie v. Sallie Mae, Inc.*, 485 F. App'x 399, 402-03 (11th Cir. 2012) (declining to expand complete preemption doctrine to the Higher Education Act, and reversing district court); *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1048 (11th Cir. 2008) (same under the Medicare Act, and reversing district court); *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1289-98 (11th Cir. 2004) (same under the Copyright Act, and reversing district court); *Geddes*, 321 F.3d at 1353-57 (11th Cir. 2003) (same under the Railway Labor Act, and reversing district court); *Anderson v. H&R Block, Inc.*, 287 F.3d 1038, 1047 (11th Cir. 2002) (same under the National Bank Act, and reversing district court) *reversed by, Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003); *Smith v. GTE Corp.*, 236 F.3d 1292, 1310-13 (11th Cir. 2001) (same under Federal Communications Act); *BLAB*, 182 F.3d at 858-59 (same under the Cable Communications Policy Act of 1984, and reversing district court); *Hudson Ins. Co. v. Am. Elec. Corp.*, 957 F.2d 826, 830 (11th Cir. 1992) (Comprehensive Environmental Response, Compensation, and Liability Act of 1980).

A claim may not be removable to federal court based on "complete" preemption, but nonetheless still subject to dismissal under "ordinary" preemption. *Geddes*, 321 F.3d at 1253 ("a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption"). Thus, where "complete" preemption is found lacking, "[i]f no other grounds for federal jurisdiction exist," a district court should remand the case and "it falls to the state courts to assess the merits of the ordinary preemption defense." *Id.*; *Ervast*, 346 F.3d at 1013 n.7 ("a decision regarding complete preemption does not decide the issue of defensive preemption," which "is a substantive issue that must be decided by a court with competent jurisdiction"). When presented with that circumstance, federal courts should avoid pre-judging any potential "ordinary" preemption defense that may be pursued on the merits of the plaintiff's claim in the state court. *See BLAB*, 182 F.3d at 859; *Schmeling v. NORDAM*, 97 F.3d 1336, 1343 (10th Cir. 1996) ("We choose to avoid, if possible, the awkwardness of simultaneously (1) holding that we lack jurisdiction and (2) commenting on the merits of the preemption defense").

Here, the parties dispute whether federal preemption provides a basis for removal in this case. Thus, the preemption doctrine at issue is "complete" preemption, and the Court will assess the parties' positions through that lens.

### ii. Gonzalez's Claim is Not "Completely" Preempted by Federal Law

Generally, "[r]emoval jurisdiction based on a federal question is governed by the well-pleaded complaint rule," which permits removal only where "the face of a plaintiff's complaint states a federal question." *Ervast*, 346 F.3d at 1012. "Complete" preemption, however, "is a narrow exception to the well-pleaded complaint rule" that permits removal of state law claims that are "wholly displaced" by a federal statute's preemptive force. *Ct. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (citing *Caterpillar*, 482 U.S. at 393); *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004). This preemptive force must be "extraordinary," such that it "convert[s]" an "ordinary state law claim" into a "statutory federal claim" that gives rise to federal question jurisdiction. *Ct. State Dental*, 591 F.3d at 1343.

"Complete preemption occurs when a federal statute both [1] preempts state substantive law and [2] 'provides the *exclusive cause of action* for the claim asserted.'" *Dial*, 541 F.3d at 1047 (emphasis added). The "touchstone" of the complete preemption inquiry is Congress's intent, *Smith*, 236 F.3d at 1312 (quoting *BLAB*, 182 F.3d at 857); more specifically, "whether Congress intended the federal cause of action to be exclusive." *Anderson*, 539 U.S. at 9 n.5.

Thus, "complete" preemption only exists where the federal statute at issue creates a federal cause of action or "federal remedy." *Id.* at 10 (holding that sections 85 and 86 of the National Bank Act possess the "requisite pre-emptive force to provide removal jurisdiction" because they "supersede both the substantive and remedial provisions of state usury laws and *create a federal remedy* for overcharges that is exclusive" (emphasis added); *id.* at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.")). Indeed, a federal cause of action must actually exist for it to be "exclusive." *See id.* at 9, n.5 (identifying the "dispositive question" and "proper inquiry" under the complete preemption analysis as "whether Congress intended the federal cause of action to be exclusive"); *cf. BLAB*, 182 F.3d at 859 n.3 (in pre-*Anderson* opinion, noting that "the provision of a federal cause of action, while relevant, is not dispositive of the issue of congressional intent."). And this makes sense, because absent a "federal remedy" through which to pursue a preempted state law claim in a district court (after repleading), preemption would serve only as a basis for dismissal, or a mere "federal defense," which can never "justify removal." *Anderson,* 539 U.S. at 6, 9; *Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

The Eleventh Circuit's opinion in *Dial* is instructive. That court undertook a review of an order denying remand based on the lower court's determination that certain state law claims were "completely" preempted by the Medicare Act. 541 F.3d at 1046. In reversing, the Eleventh Circuit noted that the Medicare Act "strips federal courts of primary federal-question subject matter jurisdiction" over claims arising under that statute in favor of administrative review before the Department of Health and Human Services. *Id.* at 1047-48. And, on that basis, the court found removal jurisdiction lacking because the plaintiff's state law claims would not have been a "civil action of which the district courts have original jurisdiction" if initially brought in federal court under the Medicare Act. *Id.* at 1048 (quoting 28 U.S.C. § 1441(b)). Although the *Dial* court couched its holding under section 1441(b), the absence of a federal remedy immediately available to the Plaintiff under the Medicare Act was nonetheless dispositive to the jurisdictional inquiry. *Id.* at 1047 (noting that removal jurisdiction only exists where the action "originally could have been filed in federal court." (quoting *Caterpillar*, 482 U.S. at 392)).

*Dial*'s rationale was extended to the Sports Act in *Bennett v. USA Water Polo, Inc.*, No. 08-23533, 2009 WL 1089480 (S.D. Fla. Apr. 21, 2009) (King, J.). There, USA Water Polo, an NGB, removed various state law tort claims it argued were "completely" preempted by the Sports Act. *Id.* at *2. Following *Dial*, Judge King looked to the text of the Sports Act to determine whether the plaintiff could have originally sued in federal court under that statute. *Id.* The court noted that the Sports Act "provides an internal mechanism—which includes a possible appeal through arbitration—within the [USOC] and its [NGBs] as the exclusive method to resolve disputes arising under th[at]" act. *Id.* Based on that, Judge King held that removal jurisdiction under section 1441(b) did not exist because, "[s]imply put, the district courts are not a forum that may provide relief for such disputes." *Id.* Thus, like *Dial*, the absence of a federal remedy under the Sports Act rendered "original jurisdiction" lacking and was dispositive to the jurisdictional inquiry. *Id.*

The common thread in *Dial* and *Bennett* is that, in each case, the absence of a federal remedy deprived the plaintiff of original federal jurisdiction over the claim, even if pled under federal law. Similarly, here, whether the SSAA provides a federal remedy for Gonzalez is a finding necessary to determine if that statute "completely" preempts Gonzalez's state law claim. *See Anderson*, 539 U.S. at 10 (a federal statute possesses the "requisite pre-emptive force to provide removal jurisdiction" where it "*create[s] a federal remedy* . . . that is exclusive" (emphasis added)); *Dial*, 541 F.3d at 1047 (holding that complete preemption requires the federal statute at issue to "provide[] the exclusive cause of action for the claim asserted." (quotations omitted)). The Court will turn to that question now.

The Defendants argue that the SSAA "completely" preempts "state law challenges to the Center's eligibility decision[s]." (ECF No. 12 at pp. 6, 8.) Thus, as a threshold matter, the Court must discern whether the SSAA creates a "federal remedy" or cause of action allowing parties to challenge the Center's eligibility determinations in a district court. In doing so, the Court avoids making any determination of whether Gonzalez's state law claim, in fact, challenges the Center's eligibility ruling, or whether the SSAA would "ordinarily" preempt such a claim.

In 2018 Congress enacted the SSAA, designating the Center "as the independent national safe sport organization" for the United States with jurisdiction over the USOC and NGBs to safeguard amateur athletes against emotional, physical and sexual abuse in sports. 36 U.S.C. § 220541(a)(1), (2). The SSAA mandates the Center to "develop training, oversight practices, policies, and procedures" to prevent sexual abuse of amateur athletes participating in sports through NGBs. *Id.* § 220541(a)(1)(3). In furtherance of that mandate, the Center is also tasked with "establish[ing] mechanisms" for "reporting,

investigat[ing], and resolv[ing]" allegations of sexual abuse. *Id.* § 220541(a)(1)(4). "Binding arbitration" is one such mechanism, as "[t]he Center may, in its discretion, utilize a neutral arbitration body" and create "policies and procedures" to "resolve" allegations of sexual abuse and "determine" an accused "coach" or "trainer['s]" ability "to participate in amateur athletic competition" going forward. 36 U.S.C. § 220541(c)(1).

But the SSAA creates no avenue through which a federal court can review these eligibility determinations. *See* 36 U.S.C. §§ 220541, 220542, 220543; (*see also* Defs.' Mot. to Dismiss, ECF No. 3 at p. 6 ("Nor does federal law provide an express or implied cause of action against the bodies charged with determining amateur athletic eligibility," and collecting cases).) So, to the extent that Gonzalez's state law claim challenges the Center's eligibility determination (an issue this Court does not reach), there is no "federal remedy" or cause of action under the SSAA through which he could pursue that claim. The Court therefore concludes that "complete" preemption is not a basis for subject matter jurisdiction in this case and that removal on that ground was improper. *Anderson,* 539 U.S. at 8-10; *Dial,* 541 F.3d at 1047-48; *Bennett,* 2009 WL 1089480 at *2.[2]

---

[2] The Defendants argue that Judge King in *Bennett* and, apparently, the Eleventh Circuit in *Dial,* erred by "conflating the lack of a valid federal cause of action with the lack of federal jurisdiction." (ECF No. 17 at pp. 8-9 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)).) The Court disagrees because, as illustrated above, the existence of a "federal remedy" or cause of action is essential to a finding of jurisdiction under the "complete" preemption doctrine. *See Anderson,* 539 U.S. at 8-10; *cf. McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.,* 857 F.3d 141, 146-48 (2d Cir. 2017) (finding no "complete" preemption and, thus, federal jurisdiction over state law claims, because plaintiff lacked standing to pursue claim for benefits under ERISA's enforcement scheme).

Ironically, the Defendants seem to have conflated the jurisdictional and merits inquiry themselves, citing a line of cases dismissing state law claims under "ordinary" preemption as a basis for federal jurisdiction. (ECF Nos. 12 at pp. 7-9, 17 at pp. 4-8 (collecting cases under the Sports Act).) Those cases, of course, having no bearing on this Court decision, as none arose in the removal context and none found federal jurisdiction under "complete" preemption. *See, e.g., Pliuskaitis v. USA Swimming,* 720 F. App'x 481 (10th Cir. 2018); *Slaney v. The Int'l Amateur Athletic Fed.,* 244 F.3d 580 (7th Cir. 2001); *Graham v. U.S. Anti-Doping Agency,* No 5:10-CV-194-F, 2011 WL 1261321 (E.D.N.C. Mar. 31, 2011); *Lee v. U.S. Taekwondo Union,* 331 F. Supp. 2d 1252 (D. Haw. 2004); *see also Caterpillar,* 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption"). In any event, it appears that the only court to have squarely

## C. The Defendants Fail to Establish Diversity Jurisdiction

Finally, the Defendants argue that the diversity statute, 28 U.S.C. § 1332, provides an independent basis for federal jurisdiction in this case. (ECF Nos. 12 at pp. 13-15, 17 at pp. 10-11.) There is no disagreement that complete diversity exists: Gonzalez is a Florida citizen, and the Center and USAT are each Colorado corporations with principal places of business in Colorado. (ECF No. 1-2 at ¶¶ 1, 2, 4.) Rather, the parties dispute whether the jurisdictional amount in controversy requirement is met. 28 U.S.C. § 1332(a). The Defendants also request leave to take jurisdictional discovery, in the alternative.

Removal based on diversity jurisdiction is only proper where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. And "[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).

In actions seeking declaratory relief, like this one, "it is well established that the matter in controversy is measured by the value of the object of the litigation." *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997) (quoting *Hunt v. Wa. State Apple Ad. Comm'n*, 432 U.S. 333, 345 (1977)). This determination is made by "measur[ing] the value of the object of litigation solely from the plaintiff's perspective.'" *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1344 (11th Cir. 2018) (quoting *Ericsson*, 120 F.3d at 218)).

Courts should not speculate to compensate for a defendant's insufficient allegations of jurisdiction. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). And if "the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* at 1320.

The Defendants argue that the amount in controversy exceeds $75,000 because they claim Gonzalez is challenging the Center's eligibility determination,

---

addressed whether the Sports Act "completely" preempted related state law claims answered that question in the negative (albeit with little explanation). *See Foschi by Foschi v. U.S. Swimming, Inc.*, 916 F. Supp. 232, 241 (E.D.N.Y. 1996); *see also U.S. Olympic Committee v. Ruckman*, No. 09-4618, 2010 WL 2179527, at *6 (D.N.J. May 28, 2010) (holding that "the Sports Act cannot form the basis for federal question jurisdiction," as it "does not create a private right of action," and granting motion for remand (citing *Bennett*, 2009 WL 1089480 at *2)).

which resulted in a ten-year revocation of his USAT membership, and "more than likely will cost [Gonzalez] more than $7,500 per year in" lost revenues from his taekwondo academy. (ECF No. 12 at p. 5.) But this conclusion is speculative and not facially apparent from the complaint. The Defendants, further, submit no evidence to support this bare assertion. Thus, the Court cannot find that the Defendants have satisfied their burden of establishing that the amount in controversy exceeds the jurisdictional threshold.

The Court also rejects the Defendants' alternative request for leave to conduct limited jurisdictional discovery. "Post-removal discovery for purposes of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007). To be sure, clear and binding precedent forecloses such requests:

> Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a). Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.
>
> . . .
>
> Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery. Doing so impermissibly lightens the defendant's burden of

establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. The proper course is remand.

*Id.* at 1216-18 (footnotes omitted). The request for jurisdictional discovery is therefore denied.

### 4. Conclusion

Finding no federal jurisdiction under the Sports Act, the "complete" preemption doctrine or the diversity statute, the Court **grants** the Motion (**ECF No. 16**) and **remands** this case to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. The **Clerk** is instructed to **close** this case and take all necessary steps to ensure prompt remand and transfer of this file. All pending motions, if any, are denied as moot.

**Done and ordered**, in Chambers, at Miami, Florida, on March 18, 2019.

Robert N. Scola, Jr.
United States District Judge